STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 0737

COASTAL BRIDGE COMPANY, LLC

VERSUS

LOUISIANA STATE LICENSING BOARD FOR CONTRACTORS

*Judgment Rendered:* JAN 1 1 2023

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C710019

The Honorable Timothy E. Kelley, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Christopher K. LeMieux<br>M. Robert C. Riess, Jr.<br>Michael A. Levatino, Jr.<br>Michael D. Lane<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellant<br>Coastal Bridge Company, LLC |
| Kevin P. Landreneau<br>Johanna R. Landreneau<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Louisiana State Licensing Board<br>for Contractors |

* * * * * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

**THERIOT, J.**

Plaintiff-appellant, Coastal Bridge Company, LLC ("Coastal"), appeals the February 22, 2022 judgment of the district court, acting in an appellate capacity in response to a petition for judicial review filed on behalf of Coastal. The district court's February 22, 2022 judgment affirmed the decision issued by defendant-appellee, the Louisiana State Licensing Board for Contractors ("the Board"), finding Coastal violated the laws and rules and regulations governing Louisiana contractors and revoking Coastal's contractor's license. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Coastal was the holder of a commercial license. On May 5, 2021, the Board issued a Notice of Violation and Hearing to Coastal, stating it had reasonable grounds to believe Coastal had violated certain statutes and/or administrative regulations under the Board's jurisdiction, specifically: (1) La. R.S. 37:2158(A)(9),[1] concerning "[p]roblems relating to the ability of the contractor, its qualifying party, or any of its principal owners or principal shareholders to engage in the business of contracting, as demonstrated by their prior contracting business experience"; and (2) La. R.S. 37:2158(A)(10),[2] concerning "[d]isqualification or debarment by any public entity." The notice advised that, on May 20, 2021, the Board would conduct an administrative hearing to consider the alleged violations.

On May 12 and 27, 2021, the Board issued Notices of Continuance, continuing the administrative hearing until June 17, 2021. In preparation for the June 17, 2021 hearing, Coastal asserts it requested "all evidentiary

---

[1] La. R.S. 37:2158(A)(9) was amended and renumbered as La. R.S. 37:2158(A)(11) by Acts 2022, No. 195, § 1, effective August 1, 2022. All references in this opinion to La. R.S. 37:2158(A)(9) are to the version of this statute as it existed prior to its amendment and renumbering by Acts 2022, No. 195, § 1 and which was applicable at all pertinent times hereto.
[2] La. R.S. 37: 2158(A)(10) was renumbered as La. R.S. 37:2158(A)(12) by Acts 2022, No. 195, § 1, effective August 1, 2022. All references in this opinion to La. R.S. 37:2158(A)(10) are to the version of this statute as it existed prior to its renumbering by Acts 2022, No. 195, § 1 and which was applicable at all pertinent times hereto.

2

documents/Judgments, plus the allegations giving rise" to the hearing. The Board allegedly responded with a complaint, detailing five judgments against Coastal as well as notices of default issued to Coastal on various Department of Transportation and Development ("DOTD") projects.

A hearing was held before the Board on June 17, 2021. Counsel for the Board introduced evidence including, but not limited to, the following: a judgment dated December 11, 2019, in favor of Associated Asphalt Partners, LLC, Associated Asphalt Tampa, LLC, and Associated Asphalt Marketing, LLC d/b/a Associated Asphalt Port Manatee and against Coastal in the amount of $60,391.00, plus interest, attorney's fees, and expenses; a judgment dated October 14, 2020, in favor of Sattler's Supply Co., L.L.C. and against Coastal in the amount of $189,617.77, plus interest, attorney's fees, and costs (subject to a credit of $40,000.00); a consent judgment dated November 19, 2019, in favor of T. Disney Trucking & Grading, Inc. and against Coastal in the amount of $74,000.00, plus interest; a Board of Tax Appeals judgment dated September 10, 2020, in favor of the Lafayette Parish School System, enjoining Coastal from further pursuit of business and future pursuit of business in Lafayette Parish and recognizing the final sales and/or use tax assessment against Coastal in the full sum of $362,296.13, plus penalties and interest together with additional statutory interest and attorney's fees; a Board of Tax Appeals judgment dated September 10, 2020, in favor of the Vermillion Parish School System, enjoining Coastal from further pursuit of business and future pursuit of business in Vermillion Parish and recognizing the final sales and/or use tax assessment against Coastal in the full sum of $115,710.57, plus penalties and interest together with additional statutory interest and attorney's fees; and seven DOTD Notices of Default dated February 4, 2020 and June 12, 2020, respectively, to Coastal on seven DOTD projects,

3

disqualifying Coastal from bidding on any work let to contract by the DOTD. Coastal did not object to the introduction of this evidence.

At the June 17, 2021 hearing, Coastal offered testimony from its staff counsel, Layne Dufour, and its president, Kelly Sills. However, at the conclusion of the June 17, 2021 hearing, the Board found Coastal guilty of violating La. R.S. 37:2158(A)(9) and (10). The Board deferred issuing a penalty until July 15, 2021, allowing Coastal to present evidence including agreements to satisfy the judgments against it and evidence from a third party as to Coastal's future viability.

A subsequent hearing was held before the Board on July 15, 2021. Coastal introduced evidence including the following: a Consent and Release Agreement between Coastal and Nationwide Mutual Insurance Company ("Nationwide"), a surety; a compilation report of Coastal's financial statements prepared by Garrety & Associates, L.L.C., certified public accountants; a redacted, signed settlement agreement between Coastal and Sattler's Supply Co., L.L.C.; a redacted, signed settlement agreement between Coastal and T. Disney Trucking & Grading, Inc.; and a redacted signed settlement agreement between Coastal and Associated Asphalt Partners, LLC, Associated Asphalt Tampa, LLC, and Associated Asphalt Marketing, LLC d/b/a Associated Asphalt Port Manatee. Coastal offered the testimony of Craig Taylor, a certified public accountant, and the testimony of Mr. Sills.

At the conclusion of the July 15, 2021 hearing, the Board voted to revoke Coastal's license. On July 21, 2021, a Board Action was issued, notifying Coastal that it was found guilty and its commercial license was revoked.

On July 26, 2021, Coastal filed a "Verified Petition for Judicial Review, Stay & Injunction" in the Nineteenth Judicial District Court, seeking a preliminary and a permanent injunction enjoining the Board from revoking Coastal's commercial license, an alternative stay of the Board's decision to revoke Coastal's

4

license,[3] and a judgment reversing the Board's decision to revoke Coastal's commercial license and reinstating Coastal's commercial license. Coastal alleged the Board's decision to revoke Coastal's license exceeded the Board's statutory authority and was an abuse of discretion, where the Board was not qualified to render financial opinions and decisions as to the viability of a contractor's business yet it disregarded testimony from Coastal's CPA that Coastal is paying off its debts and has a CPA approved plan in place to maintain long-term financial solvency. Coastal further alleged substantive and procedural due process violations, asserting as follows: it was not provided fair notice of the Board's scope of inquiry in advance of either hearing; the Board instituted a time limit at the inception of the July 15 hearing in an attempt to intimidate and dissuade Coastal from presenting testimony and evidence; the Board impermissibly based its decision on matters outside its purview (e.g., character and personal matters concerning Coastal's ownership and improper motives); and the Board's final decision was devoid of findings of fact and conclusions of law as required by La. R.S. 49:958.[4]

On October 1, 2021, a copy of the administrative record was filed with the district court. Coastal's Petition for Judicial Review was heard on February 1, 2022. At the conclusion of the February 1, 2022 hearing, the district court noted Coastal had five judgments against it as well as seven defaults with the DOTD. The district court found the record did not contain any written findings of fact or conclusions of law, but looking at the record, the statutory requirements were met, as the findings of fact and conclusions of law were implicit therein. Moreover, it noted Coastal was present during the hearing when the decision was made. The district court, ultimately, concluded there was sufficient evidence presented to

---

[3] On August 26, 2021, the district court heard Coastal's Petition for a Stay and Preliminary Injunction, which was denied on September 17, 2021.

[4] La. R.S. 49:958 was redesignated as La. R.S. 49:977 by Acts 2022, No. 663, § 1, effective August 1, 2022. All references in this opinion to La. R.S. 49:958 are to the version of this statute as it existed prior to its redesignation by Acts 2022, No. 663, § 1 and which was applicable at all pertinent times hereto.

support the Board's decision and it affirmed that decision. On February 22, 2022, the district court signed a judgment, "affirm[ing] the decision issued by the Louisiana State Licensing Board for Contractors finding Coastal Bridge Company, LLC violated the laws and rules and regulations governing Louisiana contractors and revoking Coastal Bridge Company, LLC's contractor's license ..."

Coastal appeals the district court's February 22, 2022 judgment, assigning as error the following: (1) the Board erred in failing to provide written findings of fact and conclusions of law as required by the "Administrative Act" and, thus, was in violation of the statutory protections afforded to Coastal; and (2) the Board erred in its decision to revoke Coastal's license and exceeded its statutory authority, constituting an abuse of discretion as the decision was not supported by a preponderance of evidence contained in the administrative record.

## STANDARD OF REVIEW

At all pertinent times hereto, judicial review of a decision of an administrative governmental agency was set forth in La. R.S. 49:964[5] of the Louisiana Administrative Procedure Act, which specified that judicial review shall be confined to the record, as developed in the administrative proceedings. See **Spiezio v. State Licensing Board for Contractors**, 2012-1562 (La. App. 1st Cir. 3/22/13), 2013 WL 1189373, *2 (unpublished), writ denied, 2013-0912 (La. 5/31/13), 118 So.3d 399 (citing La. R.S. 49:964(F)). When reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. **Spiezio**, 2013 WL 1189373 at *2.

Louisiana Revised Statute 49:964(G), at the time in question, stated:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision

---

[5] La. R.S. 49:964 was redesignated as La. R.S. 49:978.1 by Acts 2022, No. 663, § 1, effective August 1, 2022. All references in this opinion to La. R.S. 49:964 are to the version of this statute as it existed prior to its redesignation by Acts 2022, No. 663, § 1 and which was applicable at all pertinent times hereto.

if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

The general principle governing judicial review of administrative agency decisions is that, where some evidence as reasonably interpreted supports the agency's determination, then the agency's order exercising discretionary authority should be accorded great weight and should not be overturned absent a clear showing that the administrative action is arbitrary and capricious. **Spiezio**, 2013 WL 1189373 at *3. The test for determining whether the action taken is arbitrary and capricious is whether the action taken is reasonable under the circumstances. **Id.**

Once a final judgment is rendered by the district court, an aggrieved party may seek review of the same by appeal to the appropriate appellate court. **Id.** at *3 (citing La. R.S. 49:965). On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. **Id.** Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of

7

the administrative agency and not the decision of the district court. **Martin v. State Licensing Board for Contractors**, 2014-0963 (La. App. 1st Cir. 4/10/15), 2015 WL 1731007, *2 (unpublished), writ denied, 2015-0919 (La. 6/19/15), 172 So.3d 1091. Consequently, this court will conduct its own independent review of the record in accordance with the standards provided in La. R.S. 49:964(G). **Spiezio**, 2013 WL 1189373 at *3.

## DISCUSSION

Louisiana Revised Statute 49:958, at all pertinent times hereto, stated, in pertinent part: "A final decision or order adverse to a party in an adjudication proceeding shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. ..." Although the Board provided its final decision in writing, the written Board Action did not include findings of fact and conclusions of law.

Nevertheless, **In re Ark-La-Tex Antique & Classic Vehicles, Inc.**, 2005-1931, p. 7 (La. App. 1st Cir. 9/15/06), 943 So.2d 1169, 1174, writ denied **In re Ark-La-Tex Antique**, 2006-2509 (La. 1/12/07), 948 So.2d 151 involved review of a decision of the Board of Ethics, which failed to expressly state the factual findings in support of its conclusions. On appeal, this court noted that, while the Board therein must articulate the basis for its decision, where the findings and reasons therefor were necessarily implicit in the record and the administrative determination was supported and sustainable by a preponderance of the evidence, the administrative decision was not invalid merely because the Board failed to explicitly articulate that which was self-evident. See also **Summers v. Sutton**, 428 So.2d 1121, 1129 (La. App. 1st Cir. 1983) ("where the findings and reasons for the Commissioner's action are necessarily implied by the record, and where the court's

8

study of a brief administrative record readily yields sufficient evidence to support the administrative determination, the court will refuse to remand for the formality of having the Commissioner make explicit his findings"); compare with **Giallanza v. Louisiana Public Service Commission**, 412 So.2d 1369, 1375-76 (La. 1982) ("We will remand for the purpose of having the Commission make findings and state reasons, however, when we are unable to review the agency determination without them. ... 'while we may not supply a reasoned basis for the agency's action that the agency has not given ... we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.' ... This is not a simple case in which the findings and reasons for the Commission's action are necessarily implied by the record."). As directed by the jurisprudence in its judicial review of the case, this court in **In re Ark-La-Tex** examined both the explicit and the implicit factual findings of the Board of Ethics to determine whether its conclusions complied with La. R.S. 49:964(G). See **In re Ark-La-Tex**, 2005-1931 at p. 8, 943 So.2d at 1174. We do the same herein.

The Board found Coastal guilty of violations of both La. R.S. 37:2158(A)(9) and (10) and revoked its license. At all pertinent times hereto, La. R.S. 37:2158(A)(9)-(10) stated:

> The board may revoke, suspend, or refuse to renew a license; issue cease and desist orders to stop work; or debar any person or licensee licensed pursuant to the provisions of this Chapter for any of the following causes:
>
> ...
>
> (9) Problems relating to the ability of the contractor, its qualifying party, or any of its principal owners or principal shareholders to engage in the business of contracting, as demonstrated by their contracting business experience.
>
> (10) Disqualification or debarment by any public entity.

Coastal's arguments on appeal appear to concern the Board's finding with regard to La. R.S. 37:2158(A)(9); however, where the Board can revoke a license for any of the causes set forth in La. R.S. 37:2158(A), we first address the Board's finding

that Coastal was guilty of violating La. R.S. 37:2158(A)(10) for disqualification or debarment by any public entity.

At the beginning of both hearings, at which Coastal was present and represented by counsel, the charges and status of the proceedings were summarized. At the June 17, 2021 hearing, as noted above, the Board's attorney introduced, without objection, seven DOTD default notices issued to Coastal. The default notices outlined that Coastal was placed in default on various contractual and legal grounds including, but not limited to, the following: failure to complete the project within the contract time; insolvency; making an assignment or arranging for performance by others of all or part of the performance of the contract without prior written approval and consent of the DOTD; making an assignment of contract proceeds for the benefit of one or more creditors without prior written approval and consent of the DOTD; discontinuing prosecution of the work; failing to perform with sufficient workers, equipment, or materials to assure prompt completion of the work; and failing to perform the work in an acceptable manner, and violating any provision of the contract. Each default notice directed Coastal's sureties, Nationwide or Arch Insurance Company, to complete the work remaining to be done under the respective contracts and further advised "… Coastal Bridge is hereby **disqualified from bidding on any work let to contract by the Department [DOTD] and from sub-contracting any work from any contractor who is doing contract work with the Department.**" (Emphasis in original.).

At the June 17, 2021 hearing, counsel for Coastal noted "[t]here have been disputes with DOTD …," "DOTD disqualified the company …," and Coastal had been "defaulted because of delays … caused by financial issues." Coastal's president, Mr. Sills, testified that "the DOTD did not create the default, the bond company created this default;" however, Mr. Sills agreed that, as a part of their

10

consent agreement, another contractor would perform the work on the projects Nationwide bonded. Coastal offered no evidence demonstrating that it appealed the DOTD disqualifications or that the DOTD had lifted the disqualification or otherwise reinstated Coastal. At the conclusion of the June 17, 2021 hearing, the Board's counsel described the charge, and the Board members voted on the record, finding unanimously that Coastal was guilty of violating La. R.S. 37:2158(A)(10).

Thereafter, at the July 15, 2021 hearing, Coastal's counsel again noted Coastal had been "defaulted because of delays ... caused by financial issues." Coastal introduced into evidence the Consent and Release Agreement between it and Nationwide, reflecting that Nationwide had released its claims against Coastal. However, Coastal again offered no evidence reflecting that the DOTD had lifted the disqualification or otherwise reinstated Coastal. At the July 15, 2021 hearing, the Board, ultimately, voted to revoke Coastal's license.

Louisiana Revised Statute 37:2153(E)(4), at all pertinent times hereto,[6] stated: "In addition to any other duties and powers granted by this Chapter, the board shall: ... [s]uspend or revoke any license for any cause described in this Chapter ..." As outlined above, La. R.S. 37:2158(A)(10) stated "[t]he board may revoke ... a license ... for <u>any</u> of the following causes: ... [d]isqualification or debarment by any public entity." (Emphasis added.). Our review of the administrative record readily yields sufficient evidence to support the Board's determination that Coastal violated La. R.S. 37:2158(A)(10). Where the documentary evidence in the administrative record established that the DOTD, a public entity, disqualified Coastal, we conclude the findings and reasons for the Board's action are necessarily implied by the administrative record.

---

[6] La. R.S. 37:2153(E)(4) was redesignated as La. R.S. 37:2153(F)(3) by Acts 2022, No. 195, § 1, effective August 1, 2022. All references in this opinion to La. R.S. 37:2153(E)(4) are to the version of this statute as it existed prior to its redesignation by Acts 2022, No. 195, § 1 and which was applicable at all pertinent times hereto.

11

Although disqualification by a public entity alone is a statutorily sufficient basis for the Board to revoke a contractor's license, under La. R.S. 37:2158(A)(10), we also address the Board's conclusion that Coastal was guilty of violating La. R.S. 37:2158(A)(9), i.e., problems relating to the ability of the contractor, its qualifying party, or any of its principal owners or principal shareholders to engage in the business of contracting, as demonstrated by their contracting business experience. At the June 17, 2021 hearing, the Board's attorney introduced, without objection, five money judgments against Coastal, including two tax judgments enjoining Coastal from further pursuit of business and future pursuit of business in Lafayette Parish and Vermillion Parish, respectively. Despite admittedly being apprised of these judgments in advance, Coastal introduced no evidence of their satisfaction at the June 17, 2021 hearing. At the conclusion of the June 17, 2021 hearing, after the Board's counsel described the charge, the Board members voted on the record, finding that Coastal was guilty of the first charge of violating La. R.S. 37:2158(A)(9). However, the penalty phase was deferred to July 15, 2021, so Coastal could be allowed to present evidence of "signed documented plans" to satisfy all judgments and evidence from a third party firm as to its viability moving forward.

At the July 15, 2021 hearing, Coastal introduced settlement agreements for three of the five judgments and a compilation of Coastal's financial statements prepared by Garrety & Associates, L.L.C. The compilation noted Coastal's total assets were $2,756,916, and Coastal's current liabilities, including judgments and sales tax liabilities, totaled $2,751,017, and its long term liabilities totaled $5,559,647. The compilation identified a retained earnings (deficit) in excess of $11,098,169. The compilation further noted "[b]ecause of the recurring losses experienced since 2017, and an increasing net capital deficiency, there is substantial doubt as to the going concern of Coastal." The compilation outlined

12

the plan of Coastal's management to mitigate this substantial doubt including, but not limited to, the commitment of the shareholder to infuse capital, projects generating a gross margin of $1,026,000, and bidding on new projects. The compilation concluded as follows:

> Coastal anticipates that it will be able to operate within its forecast for the fiscal year 2021 and 2022. Coastal will continue to tighten its belt and attempt to manage costs to meet the required payment terms to subcontractors, vendors, and creditors. Coastal is operating with less staff and minimum expenses until times are better and the revenues increase. Coastal, with its long history, and commitment from its shareholder has a viable opportunity to fulfill its obligations, returning to improved financial health and having positive cash flows from operations.

At the July 15, 2021 hearing, Coastal offered the testimony of Mr. Taylor, who testified as to the compilation outlined above, agreeing there has been a significant improvement in that Coastal's liquidity and Coastal's current ratio (i.e. ability to pay its bills) is at about .93. Mr. Taylor, however, stated that he did not audit any financial statements, and he could not testify as to Coastal's contractor ability. Mr. Taylor agreed the compilation was prepared in the best light, and it was a fair statement that if any other things fell apart the whole thing could collapse. The Board asked Mr. Taylor whether he would testify that the company could possibly come out of this, and Mr. Taylor responded affirmatively and later stated, "It's a possibility."

Assuming Coastal could emerge financially, the Board's Chairman sought testimony and evidence as to Coastal's ability as a contractor and as to management of Coastal. Mr. Sills testified, deeming Coastal to be a "capable contractor" based on its capabilities and continued work. He stated he has agreements for bonding with bonding capacity at $5 million and a one million dollar line of credit. He testified Coastal had been keeping vendors and payroll current since 2019, and they were successfully building quality work safely and getting contracts. However, referencing the people to whom Coastal owed money,

13

the lawsuits involved, and the $11 million retained earnings deficit from which it was unknown if Coastal would be able to overcome based on the information presented, the Board voted to revoke Coastal's license.

On appeal, Coastal asserts the Board erred as a matter of law in finding it guilty and revoking its license. Coastal contends that, absent written findings of fact and conclusions of law by the Board, Coastal is left in the dark about why the documentary and testimonial evidence it provided was not satisfactory to avoid the revocation of its license. In this regard, Coastal asserts that, despite unreasonable time constraints,[7] it satisfied the requests of the Board, claiming it provided settlement agreements for all five outstanding judgments, a copy of the Consent and Release Agreement with Nationwide, financial statements and reports demonstrating its financial ability to pay its debts, and testimony from a CPA detailing that Coastal would remain a going concern. Coastal asserts the Board disregarded this evidence and imposed an unfair, impossible burden in asking Coastal to demonstrate its ability as a contractor, despite no evidence it performed defective or deficient work. Coastal argues its substantial efforts to satisfy "the Board's ever-changing demands" were for naught as the Board abused its discretion and exceeded its authority in revoking Coastal's license.

We note the administrative record is unclear with regard to the Board's findings as to Coastal's financial viability. Notably, the Board presented no evidence to controvert the evidence presented in the financial compilation, and as Coastal points out, the Board's Chairman stated he would assume Mr. Taylor was correct in testifying Coastal would "come out of this." To the extent Coastal's

---

[7] Although not assigned as error, in the conclusion of its appellant brief, Coastal argues it was not provided fair notice and due process before it was found guilty of violating state licensing statutes and its license was revoked. We find Coastal's arguments, in this regard, lack merit, where Coastal had notice of the hearing and alleged violations more than thirty days in advance of the June 17, 2021 hearing, Coastal requested and received the Board's evidence in advance of the hearing including the outstanding judgments and the DOTD default notices, and the administrative record does not reflect that Coastal objected to or requested a continuance of the July 15, 2021 hearing.

financial viability had formed the sole basis of the Board's decision, we find, under the circumstances presented herein, it may have been necessary to remand for the purpose of having the Board make written findings of fact and conclusions of law. See e.g. **Giallanza**, 412 So.2d at 1375-76.

However, as outlined above, the Board also referenced the people to whom Coastal owed money and the lawsuits involved, when voting to revoke its license.[8] We note that only three of the five judgments have settlement agreements in place and the terms of those settlements agreements, including the amount of the payments, are unknown. Coastal introduced no signed written settlement agreements as to the two tax judgments,[9] which enjoin it from further pursuit of business and future pursuit of business in Lafayette Parish and Vermillion Parish. Additionally, as outlined above, the DOTD default notices outline that Coastal is disqualified from bidding on any work let to contract by the DOTD and also from subcontracting any work from any contractor who is doing contract work with the DOTD. We find these are factors pertinent to the ability of Coastal to engage in the business of contracting, as demonstrated by its contracting business experience. Considering such, our review of the administrative record readily yields sufficient evidence to support the Board's determination that Coastal violated La. R.S. 37:2158(A)(9). Where the documentary evidence in the administrative record established that Coastal has two unsatisfied judgments against it for sales and/or

---

[8] Additionally, Coastal's violation of La. R.S. 37:2158(A)(10) was a sufficient basis to revoke its license.

[9] In correspondence to the Board's Compliance Director, dated July 13, 2021, Coastal's counsel represented Coastal had "obtained written settlement agreement or agreements to resolve all the judgments identified in the Complaint" against it. At the July 15, 2021 hearing, Coastal's counsel asserted there was an agreement in principle to set a payment plan in place for both tax judgments, and the agreement needed to be reduced to writing. He further contended the parish had agreed to a re-audit for one of the judgments, and the amount likely would be reduced. It appears Coastal's counsel emailed counsel for the parishes, who expressed his clients may have a "conceptual willingness to receive installment payments" and further outlined redacted terms he "believe[d] would be acceptable to each of [his] clients." In any event, signed, written settlement agreements for the tax judgments were not introduced into evidence in the administrative proceeding, and nothing reflects when, if at all, Coastal would be permitted to work in Lafayette or Vermillion Parishes.

use tax assessments and remains enjoined from work in two parishes and is disqualified from doing contract work or subcontract work for DOTD, we conclude the findings and reasons for the Board's action are necessarily implied by the administrative record.

This matter does not present complex issues for judicial review, and the absence of factual findings herein does not make us unable to review the Board's determination and whether it is arbitrary, capricious, or without support by evidence in the record. Thus, we find the Board's decision was not invalid merely because it failed to explicitly articulate that which was self-evident. After a thorough review of the administrative record, we find the Board's finding that Coastal was guilty of violating La. R.S. 37:2158(A)(9) and (10) and the Board's revocation of Coastal's license was supported by a preponderance of the evidence and was reasonable under the circumstances. Accordingly, the Board's revocation of Coastal's contractor's license was not arbitrary and capricious.

## CONCLUSION

After considering the record herein, the February 22, 2022 judgment, which affirmed the decision issued by the Louisiana State Licensing Board for Contractors finding Coastal Bridge Company, LLC violated the laws and rules and regulations governing Louisiana contractors and revoking Coastal Bridge Company, LLC's contractor's license, is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Coastal Bridge Company, LLC.

**AFFIRMED.**